## JONES v. HUDSON.

1. Where, in a cause, with all parties in interest before the court, a person is recognized as trustee of land under a lost deed, and is authorized to make sale of any portion of such land, and reinvest the proceeds for the same uses, and he accordingly makes sale and conveyance, for value, of a part of this land, the *cestuis que trust* cannot afterwards aver against his deed, nor disturb rights *bona fide* acquired thereunder.

2. Nor was the purchaser bound to see to the proper application of the proceeds.

3. This deed, absolute in form, having been taken and recorded under an agreement that the purchaser should reconvey to the trustee, if repaid the consideration money, with interest, in thirty days, it is not clear that the trustee or *cestuis que trust* could, eleven years afterwards, claim a reconveyance on tender of the money.

4. But this purchaser having mortgaged this land as an indemnity to two of his sureties, the mortgage having been foreclosed, and the property sold and purchased by one of the mortgagees, who had no notice of any, other outstanding claims against the property until the day of sale, the rights of the trustee and his *cestuis que trust*, a mere equity, could not be enforced against this last purchaser, who, under the mortgage, was a *bona fide* purchaser for valuable consideration without notice.

5. A second purchaser for value without notice from a first purchaser who was charged with notice, is a *bona fide* purchaser, and entitled to protection as such.

Before FRASER, J., Greenville, July, 1884.

The opinion states the case. The Circuit decree was as follows:

It is by no means clear that the validity of the order of sale was in any way dependent upon John M. Jones being a trustee. These questions, however, while raised by the exception, were not pressed in the argument of counsel. The order to reinvest the proceeds of sale was not a condition of the sale, but was only a direction to the trustee, and which he could have been compelled by proper means to carry out. It may be, however, that the knowledge beforehand of the misapplication of the funds intended by the trustee, tainted the whole transaction as between him and William A. Hudson. If the contest here was between him, Emmala B. and Elizabeth E. Jones and William A. Hud-

son, I think that the latter could claim no greater rights than those of a mortgagee.

It is not necessary, however, to determine this question; the dispute is not with William A. Hudson, but with William H. Austin, who claims the land as a subsequent purchaser, *bona fide* and for valuable consideration, and without notice of the equities between the original parties. Now, William A. Hudson held under a legal title, valid on its face and duly recorded, without any notice on the record that the deed was any other than it purported to be on its face. Holding this he made a mortgage of this land to the defendants, William H. Austin and Mrs. Ann F. Hudson, to secure them against a liability assumed by them as trustees under guardianship bond, given by the said William A. Hudson.

No question is raised as to the bond being signed by the trustee and the mortgage given at the same time, but it is claimed that these trustees can only date their consideration from the payment of the amount for which they might become liable as trustees, which was not until after the sale was made under the mortgage, under which the defendant, William H. Austin, purchased. Neither William H. Austin nor Mrs. Ann F. Hudson had any notice of any of the equities of the plaintiffs at the time they took the mortgage, or at any time before the order for sale under the mortgage.

A mortgagee is a purchaser who will be protected as well as one who claims the legal title. *Haynsworth* v. *Bischoff*, 6 *S. C.*, 159. The assumption of an irrevocable liability is a sufficient consideration to support this defence. *Pom. Eq. Jur.*, § 747. In cases where sureties take collaterals to secure and protect themselves, the sureties have a right to collect the securities and foreclose the mortgage before paying the debts. *Hellams* v. *Abercrombie*, 15 *S. C.*, 110. A second purchaser without notice from a first purchaser with notice, will be protected. *Pom. Eq. Jur.*, § 754; 1 *Story Eq. Jur.*, § 308. The title now held by the defendant, Austin, must be referred to the mortgage, and is entitled to all the protection which a deed of that date would have given.

Besides all this, it seems to me that there has been great *laches*

on the part of all the plaintiffs in allowing this property to stand so long in the apparent ownership of William A. Hudson, by which means he has been able inextricably to involve innocent third parties in heavy losses, if it now turns out that he was not entitled to mortgage the land.

It is therefore ordered and adjudged, that the complaint be dismissed with costs.

*Mr. W. H. Irvine*, for appellants.

*Messrs. Wells & Orr*, contra.

October 23, 1885.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    This was an action for the recovery of a small tract of land, containing five acres. At one time it was the property of the late General Waddy Thompson, who, some time between March and November of the year 1850, conveyed this parcel as part of a larger tract to his son-in-law, John M. Jones, in trust for the sole use and benefit of his daughter, Eliza W., wife of the said Jones, and such issue as she might have at her death. But the precise terms of the deed are not known, as it was handed back to the donor, but not for the purpose of being cancelled. It was never returned or placed on record. On November 11, 1850, the said Thompson executed another deed of trust, whereby he gave to the said Jones in trust for the use and benefit of the said Eliza W. and her issue certain negro slaves, and also the lands above mentioned, but in referring to the lands he says: "For which I have already executed to her a deed of conveyance."

In December, 1851, the said Eliza W. Jones died, leaving as her only issue two daughters, the plaintiffs, Emmala B. and Elizabeth E. Jones, and on November 10, 1856, the said Waddy Thompson executed another deed, or declaration of trust, to the said Emmala B. and Elizabeth E. to said lands, to them and the heirs of their bodies living at their deaths, wherein he constituted himself the trustee. But this deed or declaration of trust was afterwards, in 1882, set aside by order of Judge Cothran, and "the first deed declared valid and of full force and effect."

On January 27, 1867, the said John M. Jones, as trustee, instituted a proceeding against the said Emmala B. and Elizabeth E. Jones, his daughters, stating that said lands were unprofitable and failed to support his *cestuis que trust*, and praying that he be authorized and empowered to sell and dispose of any part of said lands for the uses and purposes therein mentioned. Elizabeth E. Jones, being a minor, was regularly represented by a guardian *ad litem*, and after reference and proper inquiry, the prayer of the petition was granted by Judge Orr, who passed an order February 3, 1869, giving the said John M. Jones, as trustee, "the power to sell and convey and make good titles to all or any portion of the said lands, and that the funds arising from any such sales shall be reinvested for the *cestuis que trust*, subject to the conditions in the original deeds," &c.

Under and by virtue of this order the said John M. Jones, as trustee, from time to time disposed of considerable portions of these lands, and by virtue thereof on June 5, 1872, executed to the defendant, Hudson, a deed of the five acres in dispute, expressed to be for the consideration of $105. This deed was regularly recorded July 8, 1872. Hudson, the donee, included this little tract in a mortgage given to Ann F. Hudson and William H. Austin August 11, 1877, to hold them harmless as his sureties on a certain bond. This mortgage was afterwards foreclosed by the sale of the lands, and at that sale the defendant, William H. Austin, became the purchaser of the five acres aforesaid.

Conceding this perfect chain of paper title from John M. Jones as trustee, the plaintiffs, Emmala B. and Elizabeth E. Jones, daughters of the trustee, claimed that their father, John M. Jones, had no right as trustee to sell the land; but if he had, that the conveyance by him to Hudson was in fact only a mortgage to secure the $105, and that the mortgagees, Ann F. Hudson and William H. Austin, had notice of that fact; and that in October, 1883, before this suit was brought, the said John M. Jones tendered to the said William A. Hudson, the aforesaid $105, and the interest thereon, and therefore they were entitled to recover the said tract of land. At the time John M. Jones executed the deed to Hudson, something was said about the conveyance being a mortgage to secure the aforesaid $105.

The evidence is not in the Brief, but the master, S. J. Douthit, Esq., made a full and exhaustive report, in which he says that "John M. Jones being pressed for money to pay the taxes on the real estate which he held in trust for his daughters, endeavored to borrow money of the defendant Hudson on a mortgage of a portion of said lands. Hudson declined to loan on a mortgage, but agreed to let him have $100 if he would execute and deliver to him a deed of the land in question, which Jones finally agreed to. Hudson, on June 5, let him have $100, and charged him $5 for surveying the land and drawing the papers, and on the same day Jones, as trustee, executed and delivered to Hudson a deed to said land in consideration of $105. Hudson, at the same time, gave Jones an instrument of writing whereby he stipulated and agreed that if Jones paid him $105 in thirty days thereafter, he would not place said deed on record, but would reconvey the land to him. Jones did not pay the money within the thirty days, and the deed was put on record, as stated, July 8, 1872. * * * At the time the mortgage was executed to Austin and Ann F. Hudson, they had no notice that Jones claimed that said deed was a mortgage," &c. The master further states that Jones testified that he had given Austin notice of the claim that the deed to Hudson was only a mortgage, but that this was denied by Austin. It was not, however, alleged that such notice was given at or before the time the mortgage was executed, nor even before the decree of foreclosure, but on the very morning of the sale, ordered in the decree of foreclosure.

The cause came on for trial by Judge Fraser, who ruled that William A. Hudson held under a legal title, valid on its face and duly recorded; that even if the conveyance, absolute in form, was really a mortgage between the original parties, neither William H. Austin nor Ann F. Hudson had any notice of the alleged equities of the plaintiffs at the time they took their mortgage, or at any time before the order for sale under the mortgage, and therefore Austin, the purchaser at the sale, was a *bona fide* purchaser for valuable consideration; and dismissed the complaint. From this decree the plaintiffs appeal upon the following grounds:

1. "Because his honor erred in finding as a fact that Austin had no notice of the nature of the transaction as to the transfer

of the land from Jones to Hudson, when the proof seems convincing that Austin was specifically notified of the nature and particulars of said transaction, and that the conveyance was intended merely as a security for a loan, and that Austin purchased with full knowledge of the rights and equities of the plaintiffs.

2. "Because his honor erred in holding that it would now be too late for Emmala B. and Elizabeth E. Jones to claim as against strangers dealing with the property, when the proof shows that neither of said parties signed said conveyance to Hudson, nor knew of the subsequent possession of the land by Hudson, or of his mortgaging it to Ann F. Hudson and Austin, until a few weeks before the commencement of this suit.

3. "Because it was error to hold that John Jones was authorized to sell the land under the order of the Court of Common Pleas, February 6, 1869, whether the said Jones reinvested the fund or not.

4. "Because the said Jones, under the deed of General Thompson creating the trust, was trustee only during the life of his wife, Eliza Jones, who died on December 8, 1854. His trusteeship, therefore, terminated long prior to the transaction with Hudson.

5. "Because the conveyance by Jones to Hudson, being in reality only a mortgage, and intended by the parties as such, and Hudson having knowledge of the way in which Jones intended applying the money advanced by him, vitiated the transaction for all purposes whatever.

6. "Because the decree is in other respects contrary to the law and justice and the evidence of the case."

The objection is made, in the first place, that John M. Jones was not trustee at all, and had no right whatever to sell and convey the land. In disposing of property, the first *bona fide* deed is irrevocable, and gives it beyond the reach of subsequent attempted modifications by the donor. By the first deed of General Thompson, signed, sealed, and delivered, although afterwards mislaid, John M. Jones was appointed trustee and the rights of the parties fixed. Whatever may have been the precise terms of that deed, not clearly known, the matter was

brought before the court in 1869, and Judge Orr made an order which recognized John M. Jones as trustee, and expressly empowered him "to sell and convey and execute good and sufficient title to all or any portion of the tract of land referred to in the trust deed as in his judgment may be to the interest of the *cestuis que trust*," &c.

This order was made in a case in which all the parties were before the court; indeed, it was made at the instance of John M. Jones, expressly for the benefit of the other plaintiffs. It was made after proper reference and inquiry, was never appealed from, but acquiesced in from that time (1869) until this action was brought in 1883, a period of more than ten years Under these circumstances, it must be considered that the order was tantamount to a new arrangement by the parties themselves. It is true, as argued, that the daughters did not actually sign the deed to Hudson, but the order, by which they were bound, gave their father the right to sell for them. Through this order they held out in the most solemn manner that John M. Jones was trustee, with the right to sell and make good titles; and we agree with the Circuit Judge that it is now too late for them to aver against it, or to disturb rights *bona fide* acquired under it. See *McNish* v. *Guerard*, 4 *Strob. Eq.*, 78.

It does not appear that the proceeds of sale were reinvested as directed by the order. But that duty was imposed upon the trustee, and we do not understand that the performance of it by him was a condition precedent to the validity of the conveyance. It seems that the money was needed to pay the taxes due on the trust property. As a general rule, certainly it is not the duty of a purchaser from a trustee, with power to sell and make title, to see to the application of the proceeds. See *Lining* v. *Peyton*, 2 *DeSaus.*, 375; *Redheimer* v. *Pyron*, *Speer Eq.*, 134; *Laurens* v. *Lucas*, 6 *Rich. Eq.*, 217. Assuming, then, that Jones was trustee, and had the power to sell, it follows that the legal title passed from him to Hudson, and thence to Austin, through the mortgage and the foreclosure sale under it.

But it is earnestly urged that the transaction between Jones and Hudson was not an absolute conveyance of the land, but a mortgage to secure the payment of money advanced, and the

plaintiffs are entitled to have it so declared, and upon the payment of the debt and interest secured (which was tendered before the action was commenced), they may redeem the land. It is not at all clear that at this late day, after such *laches*, the plaintiffs could establish any such right against the defendant Hudson. The money was to be returned within a certain time, which was not done. But if the plaintiffs had such right against Hudson, it does not follow that they have the same right as against all persons holding under him. Innocent parties, in ignorance of the facts which constituted the secret vice, may have become involved. The right supposed to have existed against Hudson was a mere equity, arising from his knowledge of certain facts, but that equity cannot prevail against a purchaser of the legal title without notice of those facts. The plea of purchaser without notice is a counter and higher equity. "If a second purchaser for value and without notice purchases from a first purchaser who is charged with notice, he thereby becomes a *bona fide* purchaser and is entitled to protection." *Pom. Eq. Jur.*, § 754; *Story Eq.*, § 407. And see *Black* v. *Childs*, 14 *S. C.*, 312; *Dopson* v. *Harley*, reported in a note to *Brown* v. *Wood*, 6 *Rich. Eq.*, 176, in which Chancellor Johnstone says: "Whenever, in tracing a title in defendants, you come upon an innocent purchaser having no notice, from that moment the title is considered secure in equity; under which principle, a purchaser with notice from one without notice is protected in this court."

Did Austin have notice of the secret vice, the alleged agreement between Jones and Hudson, that the conveyance, absolute in form, was in fact merely a mortgage to secure the money advanced? The testimony is not in the Brief, but both the master and the Circuit Judge concurred in finding that he did not. The defeasance given by Hudson was never recorded, while the deed absolute in form was on the record. Hudson was in possession, using the land as his own, and had been for eight years. There is no allegation even that Ann F. Hudson and the defendant Austin had notice, when they took their mortgage from William A. Hudson, on August 11, 1877, or when the decree of foreclosure was rendered, or at any time before the morning of

the day (sales-day, July, 1880) on which the land was sold by order of the court.

Even if there was no conflict in the testimony as to what occurred on that occasion, and notice of the claim of Jones as to the mortgage was then given to Austin, we think it came too late, and was not sufficient. "A mortgagee of lands is a purchaser within the meaning of the rule which protects a purchaser for valuable consideration without notice." *Haynsworth* v. *Bischoff*, 6 *S. C.*, 159. "Where the defeasance is not recorded, the obvious effect of the record of the deed alone is to make the grantee the apparent absolute owner of the estate, and the person who holds the defeasance may be barred of all right of redemption by a sale by the mortgagee to one who buys in good faith and without notice of such defeasance. As to third persons, the absolute conveyance is not defeated or affected unless the defeasance is also recorded." 1 *Jones Mort.*, §§ 548 and 549.

The judgment of this court is that the judgment of the Circuit Court be affirmed.